| | |
|---|---|
| James E. Cecchi<br>Lindsey H. Taylor<br>CARELLA, BYRNE, CECCHI<br>OLSTEIN, BRODY & AGNELLO<br>5 Becker Farm Road<br>Roseland, New Jersey  07068<br>(973) 994-1700 | Marc I. Gross<br>Gustavo F. Bruckner<br>Samuel J. Adams<br>POMERANTZ HAUDEK<br>GROSSMAN & GROSS LLP<br>100 Park Avenue<br>New York, NY 10017<br>(212) 661-1100 |

David Jaroslawicz
JAROSLAWICZ & JAROS
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RENA NADOFF, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDCO HEALTH SOLUTIONS, INC., EXPRESS SCRIPTS, INC., ARISTOTLE HOLDING, INC., ARISTOTLE MERGER SUB, INC., PLATO MERGER SUB, INC. DAVID B. SNOW, HOWARD W. BARKER, JR., JOHN L. CASSIS, MICHAEL GOLDSTEIN, CHARLES M. LILLIS, MYRTLE S. POTTER, WILLIAM L. ROPER, DAVID D. STEVENS, BLENDA J. WILSON, RICHARD J. RUBINO, and GABRIEL R. CAPPUCCI<br><br>Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, by her attorneys, alleges upon personal knowledge as to her own acts and upon information and belief premised on the investigation of his counsel as to all other matters, as follows:

## NATURE OF ACTION

1. Plaintiff Rena Nadoff ("Plaintiff") purchased or acquired shares of the common stock of Medco Health Solutions, Inc. ("Medco" or the "Company") (New York Stock Exchange: MHS) prior to the events giving rise to the allegations herein, and continues to hold such shares.

2. This action arises from breaches of fiduciary duties in connection with a definitive merger agreement (the "Merger Agreement") entered into on July 20, 2011, between Medco and Express Scripts, Inc. ("Express") and its wholly owned subsidiaries Aristotle Holding Inc., Aristotle Merger Sub, Inc., and Plato Merger Sub, Inc. in a transaction valued at approximately $29.1 billion (the "Proposed Acquisition"). Plaintiff alleges that the Individual Defendants (defined herein) have breached their fiduciary duties by agreeing to the Proposed Acquisition based on a flawed process which has resulted in grossly inadequate compensation for shareholders. As such, Plaintiff and the other public shareholders of Medco common stock are entitled to enjoin the Proposed Acquisition or, alternatively, to recover damages in the event that the transaction is consummated.

3. Pursuant to the terms of the Proposed Acquisition, each shareholder of Medco will receive $28.80 in cash and 0.81 shares of Express Scripts Holding Company, a company to be created from the Proposed Acquisition, for each of their Medco shares. Express shareholders will become shareholders of Express Scripts Holding Company and receive one share of the new holding company for each share of Express that they own. Based on the July, 20, 2011 closing price of Express shares, Medco shareholders will receive approximately $71.36 worth of cash and stock for each share of Medco. This price represents a 28% premium over Medco's closing share price at the time that the Merger Agreement was executed. However, Medco shares have

fluctuated between $43.45 and $66.38 per share over the past year, and the purchase price represents a premium of only 9.12% over the twelve month high of 65.39 on January 18, 2011. In addition, Express, in its Securities Act Rule 425 filing with the Securities and Exchange Commission ("SEC") on July 21, 2011, notes that the Proposed Acquisition of a similar company will dramatically cut costs for the new Express corporation and, according to Express, allow the newly formed corporation to "better manage the cost and care associated with specialty medications, enhance our mail pharmacy technology, and accelerate the research, development and deployment of trend management solutions to address inefficiencies in the marketplace." As such, the Proposed Acquisition is not reflective of the Company's intrinsic value, its future growth potential and prospects, or its strategic value to Express.

      4.    Recognizing the inherent value of the Company and the tremendous strategic value that Medco could confer to buyers, the Medco board agreed to preclusive devices which virtually make it economically and practically impossible for a third-party bidder to make a superior offer to buy Medco. For instance, the Board agreed to the following deal protection devices in blatant breach of its fiduciary duties to Medco's public shareholders:

      a.    A termination fee of $950,000,000 plus expenses reimbursement up to $100,000,000 in expenses;

      b.    A No Solicitation clause requiring Medco to immediately cease any discussions or negotiations with other potential bidders who may be able to offer a superior bid *(see* Merger Agreement §5.4(a));

      c.    a provision requiring the Company to provide Express with prompt notice of any nonpublic information provided to a potential bidder who may subsequently submit an offer *(see* Merger Agreement §5.4(a));

        d.      a provision requiring the Company to provide Express with prompt notice of any party requesting confidential information, the material terms and conditions of any takeover proposal, and the identity of any such party *see* Merger Agreement §5.4(c); and

        e.      a provision requiring, in the event that a superior proposal is submitted to the Board, the Company to provide Express with a copy of the superior takeover proposal and give Express six business days to revise its proposal *(see* Merger Agreement §5.2(b)).

    5.      The negotiation and structure of the Proposed Acquisition are the result of an unfair process, result in the denial to Company shareholders of important information regarding the value of their shares of Medco, and do not provide for adequate value for Medco. The decision of the Individual Defendants (as defined below), who constitute Medco's Board and key officers, to pursue the Proposed Acquisition constitutes a breach of their fiduciary duties to Plaintiff and other Medco shareholders.

## THE PARTIES

    6.      Plaintiff Rena Nadoff is a citizen of the State of New York, residing in New York, New York. Plaintiff is and, at all relevant times, has been the owner of shares of Medco common stock.

    7.      Medco is a corporation duly organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 100 Parsons Pond Drive, Franklin Lakes, NJ. Medco is a leading pharmacy benefit manager ("PBM"), with the nation's largest mail order pharmacy operations.

    8.      As of April 15, 2011, the number of shares of Medco common stock outstanding was 399,799,325.

9. Defendant David B. Snow, Jr. ("Snow") is, upon information and belief, a citizen of the State of Connecticut, and has served as Chairman of the Medco Board of Directors, CEO and a Director of Medco since June 2003.

10. Defendant Howard W. Barker, Jr. ("Baker") is, upon information and belief, a citizen of the State of Florida, and is, and was during all relevant times, a Director.

11. Defendant John L. Cassis ("Cassis") is, upon information and belief, a citizen of the State of New York and is, and was during all relevant times, a Director.

12. Defendant Michael Goldstein ("Goldstein") is, upon information and belief, a citizen of the State of New York, and is, and was during all relevant times, a Director.

13. Defendant Charles M. Lillis, Ph.D ("Lillis") is, upon information and belief, a citizen of the State of Colorado, and is, and was during all relevant times, a Director.

14. Defendant Myrtle S. Potter ("Potter") is, upon information and belief, a citizen of the State of California, and is, and was during all relevant times, a Director.

15. Defendant William L. Roper, M.D., M.P.H. ("Roper") is, upon information and belief, a citizen of the State of North Carolina, and is, and was during all relevant times, a Director.

16. Defendant David D. Stevens ("Stevens") is, upon information and belief, a citizen of the State of North Carolina and is, and was during all relevant times, a Director.

17. Defendant Blenda J. Wilson, Ph.D. ("Wilson") is, upon information and belief, a citizen of the State of Georgia, and is, and was during all relevant times, a Director.

18. Defendant Richard J. Rubino ("Rubino") is, upon information and belief, a citizen of the State of New Jersey and is, and was during all relevant times, Senior Vice President, Finance and Chief Financial Officer.

19. Defendant Gabriel R. Cappucci ("Cappucci") is, upon information and belief, a citizen of the State of New Jersey and is, and was during all relevant times, Senior Vice President and Controller, Chief Accounting Officer.

20. Defendants Snow, Baker, Cassis, Goldstein, Lillis, Potter, Roper, Stevens, Wilson, Rubino and Cappucci are collectively referred to herein as the "Individual Defendants."

21. Defendant Express is a Delaware corporation which maintains its principal place of business at One Express Way, St. Louis, Missouri 63121. Express is one of the nation's leading full-service PBM companies. The Company coordinates the distribution of outpatient pharmaceuticals through a combination of benefit management services, including retail drug card programs, Home Delivery services, formulary management programs and other clinical management programs.

22. Aristotle Holding, Inc., a Delaware corporation and wholly owned subsidiary of Express. Upon information and belief, its principal place of business is in St. Louis, Missouri.

23. Aristotle Merger Sub, Inc., a Delaware corporation and wholly owned subsidiary of Aristotle Holding, Inc. Upon information and belief, its principal place of business is in St. Louis, Missouri.

24. Plato Merger Sub, Inc., a Delaware corporation and wholly owned subsidiary of Aristotle Holding, Inc. Upon information and belief, its principal place of business is in St. Louis, Missouri.

**JURISDICTION/VENUE**

25. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) in that this is a class action in which the amount in controversy exceeds the value of $5

million, exclusive of interest and costs, and a member of the putative class is a citizen of a State different than the citizenship of one of the Defendants.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this case on her own behalf and as a class action, pursuant to Fed.R.Civ.P. 23, on behalf of all stockholders of the Company, except Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants, who will be threatened with injury arising from Defendants' actions as are described more fully below (the "Class").

28. This action is properly maintainable as a class action.

29. The Class is so numerous that joinder of all members is impracticable. The Company has hundreds of stockholders who are scattered throughout the United States.

30. There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

    a. Whether the Proposed Acquisition as negotiated and structured denies shareholders information (particularly with respect to the value of their shares) necessary to make an informed decision whether to sell their shares;

    b. Whether the Individual Defendants have breached their fiduciary duties owed by them to Plaintiff and other members of the Class, including their duties of entire fairness, loyalty, due care, and full disclosure; and

   c. Whether Plaintiff and the other members of the Class are being and will continue to be injured by the wrongful conduct alleged herein and, if so, what is the proper remedy and/or measure of damages.

  31. Plaintiff is committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class.

  32. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

  33. The Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

<b>SUBSTANTIVE ALLEGATIONS</b>

**<u>Medco, Its Growth, and Its Strategic Appeal</u>**

  34. As stated in the Company's most recent Form 10-K filed with the SEC on February 22, 2011, Medco a leading healthcare company providing pharmacy services for a wide range of clients that provide prescription drug benefits to their underlying membership, including employers, health care plans, labor unions, and government agencies. As a PMB, Medco helps reduce the cost of administering healthcare benefits for its clients and their members. The

Company achieves its goals through a variety of strategies, including by encouraging the substitution of high-cost drugs for less expensive generic substitutes, counseling clients on cost-effective ways to manage chronic diseases, securing discounts for purchases from both drug manufacturers and retain pharmacies, and administration of prescription dispensing through their mail-order pharmacies.  In 2010, Medco administered 740 million prescriptions.

35.     The Company has recently been expanding its international reach through acquisitions and joint ventures, and currently has offices and conducts business in various countries throughout Europe, North America and Asia.  For instance, in 2008 Medco purchased Europa Apotheek Venlo B.V., a company primarily focused on providing mail-order pharmacy services in Germany.  In 2010, the Company entered into a partnership with Apoteket, the largest pharmacy chain in Sweden.  Also in 2010, Medco entered into a partnership with Celesio AG, a leading service provider within the European pharmaceutical and healthcare markets, to focus on patients with chronic or difficult conditions to manage.

36.     Business results have been strong for Medco, as the Company continues to experience record growth rates.  In a press release dated February 22, 2011 describing its full-year 2010 earnings, the Company noted that its GAAP diluted earnings per share ("EPS") increased 21.1 % to a record $3.16, up from $2.61 in 2009.  In addition, the press release stated that total net revenues increased 10.3% to a record of nearly $66.0 billion, with service revenues up 28.0% to a record $1.08 billion.  EBITDA also increased 8.1% to a record $2.97 billion, yielding a full-year record of $3.11 per adjusted prescription.  Retail volume in 2010 also reached record levels for Medco, with 630.3 million prescriptions, a 6.6% increase over 2009.

37.     The Company continued to report significant growth in a press release announcing its second quarter earnings report that was released the same day that the Merger

9

Agreement was announced. In the press release, defendant Snow reported that "[r]ecord specialty operating income, continued strong performance in Medicare, and record generic mail-order volume and generic dispensing rates also contributed to our earnings per share growth this quarter. Importantly, our margin percentage profile is stable and expected to grow in the future" Despite the fact that "[n]et-new sales are currently negative for 2012," Snow was nonetheless stated that "we are confident that we can drive meaningful long-term earnings growth." Specifically, Medco reported net revenues for the quarter of $17.1 billion, representing a 4.1 percent increase over the same quarter the previous year. In addition, the Company reported second-quarter 2011 GAAP diluted EPS of $0.85, up 10.4 percent compared to $0.77 for the second quarter of 2010.

38. The Company again reiterated that it anticipates continued growth over the coming year and beyond. Also in the July 21, 2011, press release, the Company stated that they anticipate full-year 2011 GAAP diluted EPS to increase 14 to 17 percent over the previous year. Defendant Rubin, speaking to the likelihood of a strong second half of 2011 and beyond for the Company, stated on February 22, 2011:

> The EPS contribution from new generic introductions in 2011 is expected to be heavily back-end weighted, comprising approximately 90 percent of the expected value for the year -- the result of generic Lipitor's scheduled availability late in the fourth quarter. Although 2011 is still expected to be the lightest year for new generic introductions in this decade, the stronger second half is followed by a year in which many blockbuster brand name drugs lose their patent protection and become available in generic form. Our clients, members and shareholders stand to benefit from what we anticipate will become the highest level of generic savings generated in our company's history.

**The Proposed Acquisition**

39. On July 21, 2011, Medco and Express announced in a joint press release that they had entered into the Merger Agreement under which Express will acquire all the Company's

outstanding shares in deal worth approximately $71.36 in cash and stock for each share of Medco for a total purchase price valued at approximately $29.1 billion.

40. The Proposed Acquisition significantly undervalues Medco, a leader in the PMB industry, and seeks to deliver it into Express's hands at a substantially inadequate price.

41. The consideration offered in the Proposed Transaction is also inadequate as it fails to adequately account for synergies that may be realized by through the Proposed Acquisition. If the Proposed Acquisition is consummated, Express will become the largest PMB in the country, and is poised to reap significant cost savings in its future business transactions. According to the New York Times on July 21, 2011, Express, led by George Paz, stated that the combination will yield $1 billion in annual cost savings for the newly formed entity. The article estimates that the deal would give Express control of approximately 35 percent of the American market. Because a linchpin of the business model for PMBs is utilizing large numbers of patients to negotiate deep discounts for the purchase of pharmaceuticals, it comes as no surprise that Express would be eager to acquire a larger client-base through the Proposed Acquisition. Express also anticipates that the Proposed Acquisition would increase profits. However, the Merger Agreement fails to adequately account for the total added benefit that the Proposed Acquisition would confer on Express. http://www.nytimes.com/2011/07/22/business/express-scripts-bid-for-medco-health-carries-risks.html (accessed July 21, 2011)

**The Board Agrees To Preclusive Deal Provisions**

42. Notwithstanding Medco's attractiveness as an acquisition candidate, the Individual Defendants have entered into a series of onerous deal protection devices which create an unreasonable hurdle to any potentially competing superior offer by a rival suitor to acquire the Company.

11

43.     The Merger Agreement deal protections will significantly reduce the likelihood that a superior offer will be made for the Company. Those provisions include a termination fee of $950,000,000 and reimbursement of up to $100,000,000 in expenses, thereby financially deterring other bidders from ever making a competing offer.  These payments would be lost value to the shareholders as they would go to Express and would need to be eaten by any other potential acquirer.

44.     Perhaps most egregiously, the Company has also agreed to: (a) a stringent No Solicitation clause *(see* Merger Agreement §5.4(a)) requiring Medco to immediately cease any discussions or negotiations with other potential bidders and to seek the return of any confidential materials given to a potential bidder that might help it in making a superior proposal; (b) a provision requiring the Company to provide Express with prompt notice of any nonpublic information provided to a potential bidder *(see* Merger Agreement §5.4(a)) as well as prompt notice of any party requesting confidential information, the material terms and conditions of any takeover proposal, and the identity of any such party*(see* Merger Agreement **§**5.4(c)); and (c) a provision requiring, in the event that a superior proposal is submitted to the Board, the Company to provide Express with a copy of the superior takeover proposal and give Express six business days to revise its proposal *(see* Merger Agreement §5.2(b)).  These informational and matching rights significantly reduce the likelihood of another potential bidder emerging, because such a suitor would not want to spend the resources necessary to make a superior proposal only to act as Express's stalking horse.  Moreover, this provision insulates Express from having to make its 'final and best' offer up front, safe in the knowledge that it can always do so later if – and only if – a rival suitor shows up and calls its low-ball bluff.

**The Board Has Protected Itself While Ensuring That Its Members Are Paid Off**

45. The Merger Agreement illustrates the degree to which the interests of the Board were not aligned with Medco's shareholders. For instance, the Merger Agreement provides for the continuing tenure of two as-yet-unnamed independent Medco directors (*see* Merger Agreement §1.6(c)), who will stand to benefit from the merged company's continued success in a way that Medco's shareholders cannot.

**The Individual Defendants' of Fiduciary Duties**

46. The terms of the Proposed Acquisition as now presented are patently unfair to the Class, and the unfairness is compounded by the disparity between the knowledge and information possessed by the Individual Defendants by virtue of their positions of control of Medco and that possessed by Medco's public shareholders.

47. The Individual Defendants' failure to reject the facially inadequate offer evidences their disregard for ensuring that shareholders receive adequate value for their stock. Their conduct has deprived Plaintiff and the Class of the right and opportunity to receive the maximum value for their shares.

48. The Individual Defendants' failure to reject the Proposed Acquisition is motivated by a self-interested desire to ensure their continued positions within the Company and/or secure benefits for themselves, while depriving the Company's public shareholders of the true value that an auction or liquidation would provide.

49. The Individual Defendants owe fundamental fiduciary obligations to Medco's stockholders to take all necessary and appropriate steps to maximize the value of their shares. In addition, the Individual Defendants have the responsibility to act independently so that the interests of the Company's public stockholders will be protected and to consider properly all

bona fide offers for the Company and to reject offers that are clearly not in the interest of shareholders.  Further, the Individual Defendants, as Directors of Medco, must adequately ensure that no conflict of interest exists between the Individual Defendants' own interests and their fiduciary obligations to maximize stockholder value or, if such conflicts exist, to ensure that all such conflicts will be resolved in the best interests of the Company's stockholders.

50. Because the Individual Defendants dominate and control the business and corporate affairs of Medco and because they are in possession of private corporate information concerning Medco's assets, businesses and future prospects, there exists an imbalance and disparity of knowledge and of economic power between the Individual Defendants and the public stockholders of Medco. This discrepancy makes it grossly and inherently unfair for the Individual Defendants to entrench and/or to enrich themselves at the expense of Medco's stockholders.

51. The Individual Defendants have breached their fiduciary and other common law duties owed to Plaintiff and other members of the Class in that they have not and are not exercising independent business judgment and have acted and are acting to the detriment of the Class.

52. Plaintiff seeks preliminary and permanent injunctive relief and declaratory relief preventing the Individual Defendants from inequitably and unlawfully depriving Plaintiff and the Class of their rights to realize a full and fair value for their stock at a premium over the market price, and to compel the Individual Defendants to carry out their fiduciary duties to maximize shareholder value.

53. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

54. Unless enjoined by the Court, Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, and/or aid and abet and participate in such breaches of duty, and will prevent the sale of Medco at a substantial premium, all to the irreparable harm of Plaintiff and other members of the Class.

55. Plaintiff and the Class have no adequate remedy at law.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

56. By reason of the above Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of Medco and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty, due care and full, candid and adequate disclosure.

57. Each Individual Defendant owed and owes Medco and its public shareholders fiduciary duties and were and are required to: further the best interests of Medco and its public shareholders; undertake an adequate evaluation of the Company's worth as to potential merger/acquisition candidates; maximize the financial compensation for Medco shareholders; refrain from abusing their positions of control; refrain from favoring their own interests at the expense of Medco and its shareholders; only consent to transactions that are in the financial interest of Medco shareholders; and act in the utmost good faith in carrying out their obligations to shareholders with due care and information.

58. Each of the Individual Defendants is required to act in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected

of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control (particularly when it involves a decision to eliminate the shareholders' equity investment in a company), applicable law requires the directors to take all steps to maximize the value shareholders will receive rather than use a change of control to benefit themselves.  To diligently comply with this duty, the directors of a corporation may not take any action that: adversely affects the value provided to the corporation's shareholders; contractually prohibits them from complying with or carrying out their fiduciary duties; discourages or inhibits alternative offers to purchase control of the corporation or its assets; or will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

## FIRST COUNT
## BREACH OF FIDUCIARY DUTY
### (Against the Individual Defendants)

59. Plaintiff repeats the allegations contained in the foregoing paragraphs as if set forth in full herein.

60. The Individual Defendants owe Plaintiff and the Class the utmost fiduciary duties of due care, good faith and loyalty.  The Individual Defendants, separately and together, in connection with the sale of Medco, violated their fiduciary obligations owed to Plaintiff and the Class, including, *inter alia*, the duty to:

    (A) Undertake an appropriate evaluation of Medco's worth as a merger candidate or in liquidation;

    (B) Engage in a meaningful auction with third parties in an attempt to obtain the best value for Medco's public shareholders;

    (C)  Act independently so that the interests of Medco's public shareholders will be protected and enhanced;

    (D)  Undertake a valuation of the liquid value of Medco's assets were they to be disposed of piecemeal in a liquidation auction.

  61.  Because the Individual Defendants have breached their duties of loyalty, due care, good faith and independence in connection with the sale of Medco, the burden of proving the fairness of the Proposed Acquisition, including all aspects of its negotiation and structure, is placed upon the Individual Defendants as a matter of law.

## SECOND COUNT
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
(Against Medco, Express Aristotle Holding Inc., Aristotle Merger Sub, Inc., and Plato Merger Sub, Inc.)

  62.  Plaintiff repeats the allegations contained in the foregoing paragraphs as if set forth in full herein.

  63.  Defendants Medco and Express aided and abetted the Individual Defendants in breaching their fiduciary duties owed to the public shareholders of Medeco, including Plaintiff and the members of the Class.

  64.  The Individual Defendants owed to Plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

  65.  By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

  66.  Medco management and Express knowingly colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in

the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the members of the Class.

67.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

WHEREFORE, Plaintiff demands judgment, as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative;

B.     Enjoining Defendants from proceeding with the Proposed Transaction;

C.     Enjoining implementation of the deal protection devices in the Merger Agreement;

D.     Directing the Individual Defendants to exercise their fiduciary duties to maximize shareholder value in any proposed sale of the Company;

E.     Imposing a constructive trust, in favor of Plaintiff and other members of the Class, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

F.     Requiring Defendants to compensate Plaintiff and the members of the Class for all losses and damages suffered and to be suffered by them as a result of the acts and transactions complained of herein, together with prejudgment and post judgment interest;

G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and experts' fees; and

H.     Granting such other and further relief as this Court may deem just and proper.

>                               CARELLA, BYRNE, CECCHI,
>                               OLSTEIN, BRODY & AGNELLO, P.C.
>                               Attorneys for Plaintiff
>
>                               By:        James E. Cecchi
>                                          JAMES E. CECCHI

Dated: July 22, 2011

Marc I. Gross
Gustavo F. Bruckner
Samuel J. Adams
POMERANTZ HAUDEK
GROSSMAN & GROSS LLP
100 Park Avenue
New York, NY 10017
(212) 661-1100

David Jaroslawicz
JAROSLAWICZ & JAROS
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780

19

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                          CARELLA, BYRNE, CECCHI,
                          OLSTEIN, BRODY & AGNELLO, P.C.
                          Attorneys for Plaintiff

                          By:    *James E. Cecchi*
                                    JAMES E. CECCHI

Dated: July 22, 2011

Marc I. Gross
Gustavo F. Bruckner
Samuel J. Adams
POMERANTZ HAUDEK
GROSSMAN & GROSS LLP
100 Park Avenue
New York, New York 10017
(212) 661-1100

David Jaroslawicz
JAROSLAWICZ & JAROS
225 Broadway, 24th floor
New York, New York 10007
(212) 227-2780